**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO.: 1:19-cv-22548-KMM

ROSA RODRIGUEZ obo R.C., a minor child,

     Plaintiff,

v.

ANDREW SAUL,[1]

     Commissioner of Social Security Administration,

     Defendant.

_____/

**REPORT AND RECOMMENDATION[2]**
**ON CROSS MOTIONS FOR SUMMARY JUDGMENT**

     This matter is before the Court on the parties' cross motions for summary judgment. Claimant's mother, Plaintiff Rosa Rodriguez ("Plaintiff" or "Rodriguez"), filed her Motion for Summary Judgment with Supporting Memorandum of Law ("Plaintiff's Motion") and a Statement of Material Facts on behalf of her minor son, R.C. ("Claimant"). ECF Nos. [20], [21]. Defendant Andrew Saul ("Defendant" or "Commissioner") filed his Motion for Summary Judgment with Supporting Memorandum of Law and Response to Plaintiff's Motion for Summary Judgment ("Defendant's Motion"). ECF Nos. [22], [23].[3] The Court must now determine whether the

---

[1] Although Nancy A. Berryhill, the Acting Commissioner of Social Security, is named as Defendant, Andrew Saul is now the Commissioner of Social Security and is automatically substituted as Defendant pursuant to Federal Rule of Civil Procedure 25(d).

[2] The matter has been referred to the undersigned for all pre-trial, non-dispositive matters, and for a Report and Recommendation on any dispositive matters. ECF No. [2].

[3] Although the Docket reflects that Defendant filed a separate Response to Plaintiff's Motion for Summary Judgment, ECF No. [23], it is the same document as Defendant's Motion, ECF No. [22].

decision reached by the Administrative Law Judge ("ALJ") is supported by substantial evidence and whether the correct legal standards were applied. After a review of the parties' Motions, the record, and all relevant authorities, the undersigned hereby **RECOMMENDS** that Plaintiff's Motion be **DENIED**, and that Defendant's Motion be **GRANTED**.

I.     **BACKGROUND**

A. **Procedural History**

On May 8, 2015, Rodriguez filed an application for Supplemental Security Income alleging that her son, a child under eighteen years of age, was totally disabled as of the disability onset date of October 8, 2007, the child's date of birth. R. at 26, 338.[4] The Commissioner denied Plaintiff's claim on August 31, 2015, and again, upon reconsideration, on November 19, 2015. *Id.* at 116, 129, 141, 146. Plaintiff subsequently requested a hearing before an ALJ which took place on November 7, 2017 in Miami, Florida. *Id.* at 46, 155, 287, 331.

Both Rodriguez and Claimant, who were represented by counsel, appeared and testified at the hearing. *Id.* at 26, 53–76. On August 10, 2018, the ALJ issued her decision denying Rodriguez's application. *Id.* at 26–40. Upon receiving an unfavorable ruling by the ALJ, Rodriguez appealed the ALJ's decision to the Appeals Council ("Council"). *Id.* at 14. On April 15, 2019, the Council denied review of the ALJ's decision stating that there was no basis for changing the ALJ's decision. *Id.* at 5. Having exhausted all available administrative remedies and pursuant to 42 U.S.C. § 405(g), Rodriguez filed the instant action. ECF No. [1] ¶ 1.

---

[4] References herein to "R. at __" are to the Social Security record, the pertinent parts of which can be found at ECF No. [12]. All the page numbers refer to those assigned by the electronic docketing system, as found on the top right corner of the page.

### B. The ALJ Hearing

Claimant, a minor child, testified that he was in the fourth grade at Alpha Charter of Excellence. R. at 54. He testified that he was doing "[p]retty bad and good at the same time" in school because although he had fun at school, he was having problems with the teachers. *Id.* Claimant testified that his teachers "always scream at [him] for no reason" and instruct him to pay attention or sit down. *Id.* at 54–55. Claimant testified that he has problems paying attention in class and "always get[s] distracted." *Id.* at 55–56. Later in the hearing, when questioned by Plaintiff's counsel, Claimant testified that he takes medication to help him pay attention in class, but that he does not notice a difference. *Id.* at 60–61. Claimant's least favorite subject in school is math because he finds it "hard" and he does not "really understand." *Id.* at 61. He explained that he had some difficulty with "times tables" and division, and his grades in math are "Cs, Bs, and sometimes As." *Id.*

Claimant testified that he has friends in school but that he does not socialize with those friends outside of school. *Id.* at 56. Claimant testified that he does his homework sometimes by himself and sometimes with the help of his mother or his sixteen-year-old brother. *Id.* at 57. On the weekends, he plays soccer with two of his friends. *Id.* at 58. The ALJ asked Claimant if he had trouble using his hands, legs, or the rest of his body. *Id.* at 58–59. Claimant responded that he did not. *Id.* at 59. The ALJ then asked Claimant if he had issues with writing. *Id.* Claimant responded that his handwriting "looks a little bit like not understandable." *Id.*

Claimant testified that sometimes he is responsible for doing the dishes. *Id.* at 59–60. He stated that he does not get along well with his older brother because they always fight. *Id.* at 60. Claimant stated that he also has problems sleeping. *Id.* at 61–62. He testified that he is uncomfortable in bed, wakes up during the night, and then the next day feels sleepy. *Id.* at 62. This makes him not pay attention. *Id.* Claimant stated that he was recently feeling sad because

his father left.  *Id.*  Claimant said that he did not tell his doctor about these feelings but did tell his

mother who responded that she also missed Claimant's father.  *Id.* at 62–63.

The ALJ asked Rodriguez if there was anything she wanted to mention after listening to

Claimant's testimony.  *Id.* at 64.  She mentioned several things.  She stated that aside from

difficulty paying attention, Claimant had also missed classes because he was sick and had doctor's

appointments. *Id.* at 64–65.  Rodriguez added that Claimant told a school counselor that he wanted

to die.  *Id.* at 65, 70.  Rodriguez stated she believed that Claimant made this statement because he

was hearing conversations that made him feel that the world was ending around the time of "the

hurricane."  *Id.* at 70.  Rodriguez commented that Claimant had been fearful and had not wanted

to sleep alone during the past year.  *Id.*  For some time, Claimant was also "seeing things" and

Rodriguez had to calm him down. *Id.* at 70–71.  She testified that she discussed this with the

psychiatrist who advised that he needed therapy.  *Id.*

Rodriguez also testified that when her son takes his medication, Focalin, she sees an

improvement in his concentration.  *Id.* at 66.  However, she cannot give him that medication when

he has serious asthma attacks given that Focalin is contraindicated with his asthma medication.  *Id.*

at 67–68.  Rodriguez stated that she did not give Claimant Focalin two to three times during the

previous school year due to his asthma attacks.  *Id.* at 68.

The ALJ asked Rodriguez about Claimant's final grades the previous year.  *Id.* at 68–69.

Rodriguez stated that although he sometimes gets Ds and Fs, she believes Claimant received As,

Bs, and Cs, but that she could not recall.  *Id.*  Rodriguez testified that Claimant almost had to repeat

the grade but did not need to do so.  *Id.*

Claimant's counsel then asked Rodriguez if there were any conditions other than Attention

Deficit Hyperactivity Disorder ("ADHD") that affected Claimant's functioning.  *Id.* at 69.

4

Rodriguez responded that Claimant's asthma and depression, which she attributed to her separation from his father, affected him as well. *Id.*

Rodriguez also testified that Claimant's chores at home include picking up his toys and washing dishes although she had to be "on top of him" to perform these activities because he seldom performs these tasks without prompting or finishes what he started. *Id.* at 71. Claimant also requires prompting to go to bed at 9:30 p.m. *Id.* He experiences nightmares and Rodriguez testified that one time he woke up with a nightmare and "didn't want to see the clock at 3:00 in the morning because he said it was the devil's time." *Id.* Rodriguez said that someone told him that at school and he was "paranoid." *Id.* Rodriguez was asked by her counsel about Claimant's independent personal hygiene. *Id.* at 71–72. Rodriguez stated that she monitors his personal hygiene and washes his hair, but he can brush his teeth and dress himself. *Id.* at 72.

Rodriguez also stated that Claimant never finishes his homework on his own, but if she supervises him it takes twenty minutes at most. *Id.* When asked how long Claimant can concentrate or pay attention to something before getting distracted, Rodriguez stated that Claimant can only pay attention to any one thing for minutes unless it is something he likes. *Id.* Rodriguez added that he even stands up to eat. *Id.* Rodriguez testified that she has spoken to Claimant's teachers who notice a difference in his attention when he is on medication versus when he is not. *Id.* at 73. However, Claimant is still having difficulties at school and Rodriguez stated that he might be admitted into special classes. *Id.* When asked if Claimant was impulsive, Rodriguez answered that he only acts impulsively when he is angry or wants something, which is not that often. *Id.* at 73–74.

Finally, Rodriguez testified that Claimant is unable to write in cursive or tie his own shoelaces. *Id.* at 74. She stated that he can express his ideas but when asked if he could do so in

writing, she responded "[n]o. . . . [n]ot much. *Id.* Rodriguez testified that based on her conversations with Claimant's teachers from the last school year, Claimant is unable to work with others in school because he distracts the group and the teacher needs to separate him from the group. *Id.* at 75. Rodriguez also testified that the Claimant was not very organized. *Id.*

## II.    STATUTORY FRAMEWORK

A child under the age of eighteen is considered disabled, and thus entitled to social security income benefits, if the child has "a medically determinable physical or mental impairment or combination of impairments that causes marked and severe functional limitations" which "can be expected to cause death or that has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.906. Social Security regulations define a "marked and severe functional limitation" as "a level of severity that meets, medically equals, or functionally equals the [listed impairments]" found at 20 C.F.R, pt. 404, subpt. P, app. 1. 20 C.F.R. § 416.902(h). The regulations provide a three-step sequential evaluation process for determining whether a child is disabled. 20 C.F.R. § 416.924(a)–(d).

First, the ALJ must determine whether the child can engage in substantial gainful activity. If he can so engage, he is not disabled. *Id.* § 416.924(a)–(b). If the child is not engaged in any substantial gainful activity, the ALJ moves to the second step, determining whether the child has a physical or mental impairment which, whether individually or in combination with one or more other impairments, is deemed to be "severe." *Id.* § 416.924(c). If the impairment is not severe, the child is not disabled. *Id.* If one or a combination of impairments is severe, the ALJ must move to the third step. At the third step, the ALJ must determine whether the child meets, medically equals, or functionally equals, an impairment listed in 20 C.F.R, pt. 404, subpt. P, app. 1 ("the

listings"). *Id.* § 416.924(d). The ALJ must consider the combined effects of all the child's medical impairments, including those that are not severe. *Id.* § 416.924(a).

For a child's impairment(s) to at least functionally equal the listings, the impairment(s) must result in "marked" limitation[5] in two domains of functioning or an "extreme" limitation"[6] in one domain. *See id.* § 416.926a(a), (d). The six domains are: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. *Id.* § 416.926a(b)(1). If the ALJ finds that the impairment does not meet the durational requirements, or the listed impairments included in that subpart, the child cannot be deemed disabled. *Id.* § 416.924(d).

## III.    THE ALJ'S DECISION

On August 10, 2018, the ALJ issued her decision finding that Claimant was not disabled within the meaning of the Social Security Act. R. at 26–40. In reaching this decision, the ALJ applied a three-step sequential evaluation process that must be used when considering whether an individual under the age of eighteen is disabled. *Id.* at 26–27; *see* 20 C.F.R. § 416.924(a). At step one, the ALJ determined that Claimant had not engaged in substantial gainful activity since May 8, 2015, the application date. R. at 29. At step two, the ALJ determined that Claimant suffered

---

[5] A child has a "marked" limitation in a domain when the impairment or impairments interfere seriously with the ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(2). A "marked" limitation also means a limitation that is "more than moderate" but "less than extreme," and it is "the equivalent of the functioning we would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean." *Id.*

[6] A child has an "extreme" limitation in a domain when the impairment or impairments interfere "very seriously" with the ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(3). An "extreme" limitation also means a limitation that is more than "marked," and it "is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least three standard deviations below the mean." *Id.*

from the following severe impairments: ADHD, speech and language impairment, and developmental delay in fine motor skills. *Id*. The ALJ found that these severe impairments caused more than minimal functional limitations. *Id.*

At step three, the ALJ found that these impairments, either alone or in combination, did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R, pt. 404, subpt. P, app. 1. *Id.* In making this determination, the ALJ reviewed the listings for asthma, neurological impairments, communication impairment, neurocognitive disorders, personality and impulse-control disorders, and neurodevelopmental disorders. *Id.* The ALJ found that the medical evidence did not support listing-level severity and "no acceptable medical source ha[d] mentioned findings equivalent in severity to the criteria of these listings." *Id*.

In addition, the ALJ found that Claimant did not have an impairment or combination of impairments that functionally equaled the severity of the listings given that Claimant's impairments did not result in either marked limitations in two domains of functioning or an extreme limitation in one domain of functioning. *Id*. at 29–40. In finding that the Claimant did not have an impairment or a combination of impairments that functionally equaled the severity of the listings, the ALJ evaluated the "whole child" as required by 20 C.F.R. § 416 926(a), (b), (c), and evaluated how Claimant functioned as compared to other children in all settings and at all times. *Id.* at 30. The ALJ considered all the symptoms and the extent to which they could reasonably be accepted as consistent with the objective medical evidence and other evidence. *Id.* In considering Claimant's symptoms the ALJ followed the two-step process: first, whether the impairments could reasonably expect to produce the symptoms; and second, the extent to which the intensity, persistence and limiting effects of the symptoms contribute to the Claimant's functional limitations. *Id.* The ALJ found that Claimant's impairments could reasonably be

expected to produce the alleged symptoms, but that the statements concerning the intensity, persistence and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record.  *Id*. at 31.

In determining whether his impairments functionally equaled the listings, the ALJ reviewed the six domains and found that Claimant had: (1) a less than marked limitation in acquiring and using information, (2) a marked limitation in attending and completing tasks, (3) a less than marked limitation in interacting and relating with others, (4) a less than marked limitation in moving about and manipulating objects, (5) a less than marked limitation in the ability to care for himself, and (6) no limitation in health and physical well-being.  *Id.* at 34–40.  Because the ALJ found that Claimant's limitations were marked in only one domain and that no limitations were extreme, the ALJ concluded that Claimant was not disabled under section 1614(a)(3)(C) of the Social Security Act.  *Id*. at 40.

### IV.    STANDARD OF REVIEW

Judicial review of an ALJ's final decision is limited to whether there is substantial evidence in the record to support the ALJ's findings, and whether the correct legal standards were applied.  *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).  "Substantial evidence is more than a scintilla, but less than a preponderance.  It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (citing *Richardson*, 402 U.S. at 401); *see also Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

In reviewing the ALJ's decision, a court is not to "reweigh the evidence" or "decide the facts anew."  *Winschel v. Comm'r, Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011).  Instead, so long as the ALJ's findings are supported by substantial evidence, they are conclusive, and the

Court must defer to the ALJ's decision. *See Crawford v. Comm'r, Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004); *see also Hunter v. Comm'r, Soc. Sec. Admin.*, 808 F.3d 818, 822 (11th Cir. 2015). Even if the Court finds that the evidence preponderates against Commissioner's decision, the Court must affirm Commissioner's decision if the decision is supported by substantial evidence. *See Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003). In this respect, "the ALJ has a basic obligation to develop a full and fair record," given that a hearing before an ALJ is not an adversarial proceeding. *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). The Court also reviews the ALJ's decision to determine whether the correct legal standards were applied. *Id.* However, no presumption of validity attaches to the ALJ's conclusions of law. *See Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991).

## V.   ANALYSIS

Plaintiff contends that the ALJ erred by failing to articulate the weight she accorded the opinions of Dr. Maria Gorelick and erred by according inadequate weight to the opinions of the psychological consultative examiner, Dr. Elsa Marban. ECF No. [20] at 7–22. Plaintiff also argues that the ALJ erred because there was substantial evidence to support a finding that Claimant had a marked or extreme limitation in the domain of acquiring and using information, and/or the domain of moving and manipulating objects. *Id.* at 18–22.[7] A finding that Claimant had a marked (or

---

[7] Because Plaintiff only challenges the ALJ's findings with respect to the domain of acquiring and using information and the domain of moving and manipulating object, the review here is limited to the challenges posed as to those domains. *See Outlaw v. Barnhart*, 197 F. App'x 825, 828 n.3 (11th Cir. 2006) (holding that the claimant waived his argument that the ALJ erred in not crediting his physical exertional impairments because, despite listing the issue in the statement of issues, "he did not elaborate on this claim or provide authority about this claim") (*citing Cheffer v. Reno*, 55 F.3d 1517, 1519 n.1 (11th Cir. 1995)).

extreme) limitation in either of those two domains would have required the ALJ to find that the Claimant is disabled.  *See* 20 C.F.R. § 416.926a(a), (d).

Defendant counters that as to the medical opinions, the ALJ was not required to articulate any weight to Dr. Gorelick's opinion because it is not a medical opinion under the statute.  ECF No. [22] at 11.  Nevertheless, even if it is considered a medical opinion, its findings are not inconsistent with the ALJ's decision and therefore, the ALJ's failure to articulate the weight it is afforded is not reversible error.  *Id.* at 12.  As to Dr. Marban, Defendant argues that the ALJ properly considered and discounted that opinion but that, in any event, the opinion was not contrary to the ALJ's findings.  *Id.* at 8–9.  Finally, Defendant argues that there was substantial evidence to support the finding by the ALJ that Claimant had less than a marked limitation in his ability to acquire and use information, ECF No. [22] at 6–13, and a less than marked limitation in his ability to move and manipulate objects, *id.* at 13–15.

Having carefully considered the parties' Motions, the record, and the applicable legal authority, and for the reasons set forth below, the undersigned recommends that Plaintiff's Motion be **DENIED**, and that Defendant's Motion be **GRANTED**.

## A.  The Medical Evidence Was Properly Considered.

For claims such as this one, filed prior to March 27, 2017, "[m]edical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions."  20 C.F.R. §§ 404.1527(a)(1), 416.927(a)(1).  Absent "good cause," an ALJ is to give the medical opinions of treating physicians "substantial or considerable weight."  *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).

Good cause to discount a medical opinion exists "when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004) (citing *Lewis*, 125 F.3d at 1440). With good cause, an ALJ may disregard a treating physician's opinion, but he "must clearly articulate [the] reasons" for doing so. *Id.* at 1240–41. Moreover, the ALJ must state with particularity the weight given to different medical opinions and the reasons thereof. *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987) (per curiam). "In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981). Therefore, when the ALJ fails to "state with at least some measure of clarity the grounds for his decision," we will decline to affirm "simply because some rationale might have supported the ALJ's conclusion." *Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984) (per curiam). However, the failure to assign weight to a medical opinion is harmless error if the opinion is consistent with the ALJ's findings. *Lara v. Comm'r of Soc. Sec.*, 705 F. App'x 804, 812 (11th Cir. 2017) (failing to assign weight to certain medical evidence was harmless because the ALJ considered these records and the ALJ's opinion was consistent with the records).

### 1. Dr. Gorelick Did Not Submit Any "Medical Opinions."

Plaintiff claims that Dr. Gorelick was Claimant's treating physician, and therefore, the ALJ should have accorded Dr. Gorelick's medical opinions "controlling weight" given that they were well-supported and consistent with the substantial evidence of record. ECF No. [20] at 7–14. Furthermore, Plaintiff argues that the ALJ "repeatedly and outright mischaracterizes the contents"

of Dr. Gorelick's treatment notes by only citing to their "benign findings to the exclusion of those which are clinically significant."  *Id.* at 12.

Defendant countered that Plaintiff does not point to any medical opinion prepared by Dr. Gorelick and that the notes referred to by Plaintiff do not contain any assessment as to what Claimant was or was not capable of despite his impairments.  ECF No. [22] at 10–11.  Because the notes are not medical opinions, Defendant states that the ALJ is not required to assign them any particular weight.  *Id.* at 11.  Nevertheless, even if they are considered medical opinions, Defendant contends that the ALJ accounted for Dr. Gorelick's notes in her opinion, and the notes are consistent with the ALJ's findings.  *Id.* at 7, 12.  As such, there is no reversible error in failing to articulate the specific weight she gave them.

Before weighing the arguments of the parties, the Court notes that Defendant correctly points out that Plaintiff does not identify what opinion of Dr. Gorelick's the ALJ failed to assign weight.  ECF No. [22] at 10.  This failure is particularly difficult given that Plaintiff's Statement of Material Facts, as well as her Motion, identifies: (1) notes, R. at 558–59, 561–62, 622–23, 763–65, 766–68, 769–71, 772–74, 775–77, 778–79, 780–81, 782–83; (2) five different "treatment plans," *id.* at 555 (dated March 12, 2015), 608 (dated September 17, 2015), 786 (dated October 3, 2017), 787 (dated March 9, 2017), 794 (dated February 6, 2016); and (3) a one-page Miami Dade County Public School form ("MDCPS form") (dated October 8, 2017), *id.* at 514, as Dr. Gorelick's "opinions."  ECF No. [20] at 7–11; ECF No. [21] at 5–7.[8]  The Court will now review each

---

[8]  The Court notes that it cannot determine from examining these medical records whether Dr. Gorelick in fact authored all of these notes or treatments plans; however, given that the Commissioner does not challenge this representation, the Court will consider all of the Banyan records as being those of Dr. Gorelick.  The MDCPS form is clearly filled out and signed by Dr. Gorelick, and thus can be attributed to Dr. Gorelick.  R. at 514.

category–the notes, the treatment plans and the one-page MDCPS form–to determine which, if any, are medical opinions.

The notes at issue are not medical opinions that the ALJ was required to weigh.  As noted above, "[m]edical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions."   20 C.F.R. §§ 404.1527(a)(1), 416.927(a)(1). Although a physician's treatment notes can constitute medical opinions if they meet the above criteria, the notes here fail to meet that standard.  *See Winschel*, 631 F.3d at 1179 (finding that treatment notes constituted medical opinions because they contained the information provided in 20 C.F.R. §§ 404.1527(a)(1), 416.927(a)(1)).

Specifically, the notes refer to Claimant's diagnosis, ADHD, and his symptoms, but provide no information as to prognosis, or what he can and cannot do or any restrictions he faces as a result of his ADHD.  R. at 558–59, 561–62, 622–23, 763–65, 766–68, 769–71, 772–74, 775–77, 778–79, 780–81, 782–83.  Specifically, although all the notes mention some of his symptoms the purpose of the notes appears to be to document his response to the ADHD medication prescribed.  *Id.*   Indeed, many of the notes are titled as "medication management" forms highlighting that the purpose of these notes was not to offer a medical opinion but rather to assess Claimant's change in symptoms while on his medications.  R. at 763–65, 766–68, 769–71, 772–74, 775–77.  Moreover, the notes provide minimal independent observations, and in some the

---

In addition, the Court notes that a review of the Record shows other entries that also appear to be notes or treatment plans, *see e.g.* R. at 611, 612, 613, 616, 617, 648, 650, 654.  However, because they appear to be either from a time period when Claimant was much younger or are illegible the undersigned's review here is of those records that were noted by Plaintiff in her argument.

observations about Claimant are recitations provided by Rodriguez.  *See, e.g.*, R., 769, 772, 775 (noting in the history of present illness that information was "as per mother").  As such, these notes are not "medical opinions."  *See Burnham v. Berryhill*, No. 16-CV-63013, 2018 WL 1709714, at *9 (S.D. Fla. Mar. 7, 2018) (concluding that the ALJ did not err in failing to assign weight to a treating source's statements in his treatment notes when the notes did not specify what work-related limitations Plaintiff may have, or the extent of any such limitations).

The treatment plans are also not medical opinions the ALJ was required to weigh.  *Id.* at 555, 608, 786, 787, 794.  The treatment plans document short visits (ranging from two minutes to five minutes, with one visit being thirty minutes in duration) and provide a summary of the services received, describe the treatment progress, indicate patient goals and objectives, specify any changes in treatment or diagnosis, track the services performed, and document medications prescribed.  *Id.*  They do not, however, provide medical source statements reflecting judgments about the nature and severity of Claimant's impairments, including Claimant's symptoms, diagnosis and prognosis, what Claimant can still do despite impairments, and Claimant's physical or mental restrictions.  *See* 20 C.F.R. §§ 404.1527(a)(1), 416.927(a)(1).  As such, the treatment plans are not medical opinions.

Finally, the MDCPS form that was signed by Dr. Gorelick is also not a medical opinion that the ALJ was required to weigh.  The form indicates that Claimant has "ADHD – Combined Type" and that his prognosis is "guarded."  *Id.* at 514.  The form also describes how ADHD affects Claimant as a student, noting that he "is easily distracted, doesn't stay at desk, doesn't complete work independently, needs frequent redirecting, supervision of at task work, is fidgety and restless and he has problems following direction."  *Id.*  The form notes that Claimant "is in need of extra time to complete work assignments and tests."  *Id.*  Although the MDCPS form completed by Dr.

Gorelick does mention Claimant's diagnosis and how his condition manifests itself generally in a school setting, this is insufficient to constitute a medical opinion. The form does not explain the nature and severity of the ADHD condition or Claimant's abilities and restrictions, including what Claimant can still do despite his diagnosis. *See Romero v. Comm'r of Soc. Sec.*, 752 F. App'x 906, 908 (11th Cir. 2018) (holding that certain medical records were not medical opinions because they did not reflect what activities Claimant could or could not perform). As such, there is no error in failing to assign weight to this report as it is not a medical opinion as defined by the regulations.

Nevertheless, even if the undersigned were to consider the notes, treatment plans and the MDCPS form as containing medical opinions, the failure to assign them weight is harmless as they were relied upon by the ALJ and are consistent with the ALJ's findings. Indeed, Plaintiff does not dispute that Dr. Gorelick's records were considered and cited by the ALJ, instead Plaintiff advances the argument that the ALJ only pointed to "benign" findings in the notes and treatment plans. ECF No. [20] at 12–13. A complete review of the ALJ's opinion undermines that argument. Specifically, in finding that Claimant has a marked limitation in attending and completing tasks, the ALJ noted that he is "easily distracted and fidgety, needs frequent redirection, and has difficulty staying on task and completing work independently." *Id.* at 36. In support of that, the ALJ cited to the MDCPS form, *id.* at 514, and one of the treatment notes, *id.* at 648, 650. In addition, although the ALJ noted that he was stable on medication, the ALJ also noted that Claimant continued to be "impulsive and rebellious at sometimes" citing to one of the treatment plans, *id.* at 649, and to one of the notes, *id.* at 769. In short, the ALJ's opinion shows that the ALJ considered Dr. Gorelick's records and cited to them extensively for both "benign" and more severe findings.

Given the fact that the ALJ considered these records, Plaintiff's reliance on *Winschel* is misplaced. ECF No. [20] at 8. In *Winschel,* the ALJ did not discuss "pertinent elements" of the

treating physician's medical opinion, which suggested that these elements were not considered in the ALJ's findings.  631 F.3d at 1178–79.  This failure in *Winschel* constituted error.  *Id.*  In the instant case, as noted above, the notes, treatment plans and the MDCPS form were cited and considered by the ALJ.  Specifically, they were considered and used in support of the finding that Claimant had a marked limitation in attending and completing tasks.  R. at 36.  Because Dr. Gorelick's records are consistent with the ALJ's opinion, the error to assign them weight is harmless.  *Sarria v. Comm'r of Soc. Sec.*, 579 F. App'x 722, 724 (11th Cir. 2014).  In *Wright v. Barnhart*, the Eleventh Circuit held that it was harmless error that the ALJ failed to explicitly state the weight afforded to physicians' opinions when they did not negate the ALJ's conclusion.  153 Fed. App'x. 678, 684 (11th Cir. 2005) (stating that it was harmless error because none of the doctors' findings negated the ALJ's conclusion that the claimant could perform a full range of sedentary work).  Here, as noted above, none of the treatment notes, plans, or the MDCPS form negate the ALJ's findings.  Instead, they were relied upon by the ALJ in reaching her findings.  *See Ortiz v. Comm'r of Soc. Sec.*, No. 6:18-cv-2060-Orl-28EJK, 2020 WL 378490, at *6 (M.D. Fla. Jan. 8, 2020) (stating that the ALJ's error in not assigning weight to medical treatment notes was harmless because the ALJ relied on treatment notes in reaching his ultimate finding).  As such, the failure to articulate weight to Dr. Gorelick's "medical opinions" is not grounds for reversal or remand.  To do otherwise, would require the undersigned to "decide the facts anew."  *Winschel*, 631 F.3d at 1178 (quoting *Phillips*, 357 F.3d at 1240 n.8).

### 2. The ALJ Did Not Err In According Partial Weight To The Opinion Of The Psychological Consultative Examiner, Dr. Marban.

As to the opinion of Dr. Marban, Plaintiff asks this Court to consider three errors by the ALJ.  ECF No. [20] at 14–18.  First, Plaintiff claims that the ALJ committed error by only assigning partial weight to Dr. Marban.  *Id.* at 14–15.  Specifically, Plaintiff argues that the ALJ's reason for

assigning partial weight is based on an improper reading of Dr. Marban's findings which noted that Claimant's speech is "marked by difficulties with enunciation." *Id.*; *see* R. at 578. Second, Plaintiff claims that the ALJ omitted discussion of important psychological findings by Dr. Marban resulting in an inadequate characterization of Dr. Marban's findings. ECF No. [20] at 16–17. Third, Plaintiff states that the ALJ failed to meaningfully reference a multitude of standardized test scores that would serve as *prima facie* evidence of a marked or extreme limitation in the domain of acquiring and using information, pursuant to 20 C.F.R. § 416.926a(e)(2). *Id.* at 17–18.

Defendant counters Plaintiff's first argument by stating that the ALJ properly discredited Dr. Marban because her opinion was not consistent with the record in regard to her assessment of Claimant's marked speech limitation. ECF No. [22] at 8–9. Second, Defendant states that the ALJ did not mischaracterize Dr. Marban's findings by not discussing the psychological findings. *Id.* at 13. Plaintiff's argument is just an invitation to have the Court assume the role of ALJ and reweigh the evidence. *Id.* Third, Defendant countered that Plaintiff is improperly requesting that this Court "interpret raw intellectual testing" scores. *Id.* at 12–13.

The ALJ committed no error in assigning partial weight to Dr. Marban's opinion. The ALJ accorded partial weight to this opinion stating that "[w]hile there is support for speech and language deficits, there is no support that they pose 'marked' difficulties." R. at 33. The ALJ noted that Dr. Marban's opinion was inconsistent with the speech and language consultative evaluation which concluded Claimant's speech was "100% intelligible despite having a lisp." *Id.* at 33, 586. The ALJ addressed and summarized the opinion of Dr. Marban finding that it was inconsistent with the speech and language consultative evaluation. *Id.* at 32–33, 572–78, 580–86. As such, the ALJ's reason for affording partial weight clearly articulated. *See Daniels v. Berryhill*, No. 17-14145-CIV, 2018 WL 3413019, at *11 (S.D. Fla. May 14, 2018) (assigning partial weight

to one-time examiner whose conclusion that Plaintiff "could stand, walk, and sit for [three] hours in an [eight]-hour workday" was inconsistent with Plaintiff's otherwise "benign medical records showing pain was controlled with injections and medication").

However, even if the ALJ improperly discounted the opinion of Dr. Marban, any error here would also be harmless as Dr. Marban's opinion is consistent with that of the ALJ's findings. In her summary, Dr. Marban notes that Claimant had a high level of distractibility and that he demonstrated poor concentration during the interview. R. at 578. This is consistent with the ALJ's finding that Claimant has a marked limitation in the domain of attending and completing tasks. *Id.* at 36. Dr. Marban's opinion also supports the ALJ's finding that Claimant has a less than marked limitation in his ability to acquire and use information. *Id.* at 35. For example, Dr. Marban notes in her summary that "[Claimant's] academic skills are within the high average range of others at his age level" and that "[h]is fluency with academic tasks and his ability to apply academic skills are both within the average range." *Id.* at 577. Even the most concerning observation made by Dr. Marban, that "[Claimant's] overall cognitive functioning fell within the extremely low range of intelligence," is qualified by Dr. Marban clarifying that these "scores may have been impacted to some extent by his high level of distractibility." *Id* at 578.

Plaintiff's second claim that the ALJ omitted discussion of Dr. Marban's important psychological findings is unpersuasive. *See* ECF No. [20] at 15–17. Specifically, the ALJ considered the following findings from Dr. Marban's learning disability consultative examination in a detailed paragraph summary:

> [Claimant] was enrolled in a regular curriculum and never repeated grades. His approach to testing was distractible. He experienced difficulty remaining still in his seat. He was observed constantly fidgeting, shaking his legs, tapping his legs on the ground, playing with his hands, tapping his hands on the desk, making noises with his mouth, whistling, mumbling to himself, scanning the room with his eyes, and interrupting testing to make small talk. He had difficulty understanding testing

instructions and therefore he produced incorrect responses. On cognitive functioning tests, he had a full scale IQ in the low average range, fluid reasoning in the average range, and verbal comprehension in the extremely low range. His written language ability was in the advanced range, written expression was in the average to very superior range, and overall ability to express himself in writing was average to advanced. His academic achievement was in the average range in math. Overall, his academic skills were in the high average range compared to others at his age level. He was diagnosed with ADHD.

R. at 32, 572–78. Plaintiff states that "Dr. Marban's clinical observations paint a very different picture than what the ALJ asserted." ECF No. [20] at 16. Plaintiff then goes on to retell the same facts, albeit in greater detail, arguing that they support a finding that Claimant had greater limitations. *Id.* at 16–17. Plaintiff points out details such as Claimant "would question the amount of time remaining" and "mumble the time in a low tone," "read questions out loud," "count on his fingers," and showed poor task persistence. *Id.* at 16. None of these details in any way contradict the findings of the ALJ. Indeed, the ALJ found that Claimant had a marked limitation in attending and completing tasks. R. at 36. Here, the ALJ thoroughly summarized the findings of Dr. Marban's report which demonstrate her consideration of the entire record. *See* R. at 32. Upon review of these additional details, they are of limited value. They are mere observations of Claimant during the testing process and are not inconsistent with the portion of the report upon which the ALJ relied.

Finally, this Court disagrees with Plaintiff that the ALJ failed to reference a multitude of standardized test scores, specifically the Weschler Intelligence Scale, that are *prima facie* evidence of a marked or extreme limitation in the domain of acquiring and using information, pursuant to 20 C.F.R. § 416.926a(e). *See* ECF No. [20] at 17–18. According to 20 C.F.R. § 416.926a(e), a marked limitation is the equivalent of the functioning one would expect to find on a standardized test with a score that is at least two, but less than three, standard deviations below mean; an extreme limitation is the equivalent of the functioning one would expect to find on a standardized test with

a score at least three standard deviations below the mean.  Plaintiff states that Claimant scored three standard deviations below mean in the Similarities subtest on the Weschler Intelligence Scale, almost two standard deviations below mean on the Vocabulary subtest, almost two standard deviations below mean on the Digit Span subtest, almost two standard deviations below mean on the full scale IQ score, and two standard deviations below mean on the Verbal Comprehension Index score.  ECF No. [20] at 17.  However, Dr. Marban's evaluation does not state what deviation is represented by the scores, *id.* at 572–78, nor do the test results themselves speak of standard deviations, *id.* at 575–76.  As such, the Court would have to determine the standard deviation, without any medical opinion on the subject, based on its own reading of these tests.  The Court cannot be called upon to independently interpret the test results to determine whether Claimant's scores present any standard deviations, when, as here, the deviation is not apparent from a reading of the evaluation.  *See Fontanez ex rel. Fontanez v. Barnhart*, 195 F. Supp. 2d 1333, 1357 (M.D. Fla. Mar. 29, 2002) (absent standardized tests that measure functional abilities in terms of standard deviations, a judge cannot usually determine the presence or absence of an extreme or marked limitation).

### B. Substantial Evidence Supports The ALJ's Finding That Claimant Had Less Than Marked Limitations In His Ability To Acquire And Use Information.

In the domain of "acquiring and using information," the Social Security rules provide that a school-age child (age six to age twelve), without an impairment should be able to learn to read, write, do math, and discuss history and science.  20 C.F.R. § 416.926a(g)(2)(iv).  The child will need to use these skills in academic situations to demonstrate what he or she has learned by "reading about various subjects and producing oral and written projects, solving mathematical problems, taking achievement tests, doing group work, and entering into class discussions."  *Id.* The child "will also need to use these skills in daily living situations at home and in the community

(e.g., reading street signs, telling time, and making change)." *Id.* The child "should be able to use increasingly complex language (vocabulary and grammar) to share information and ideas with individuals or groups, by asking questions and expressing [his or her] own ideas, and by understanding and responding to the opinions of others." *Id.*; *see also* SSR 09-3p, 2009 WL 396025 (Feb. 17, 2009).[9]

Plaintiff argues that there is substantial evidence of record to support a finding that Claimant has a marked and/or extreme limitation in the domain of acquiring and using information and that the ALJ erred in not making such a finding. ECF No. [20] at 19–21. In support of this, Plaintiff states that the ALJ ignored the intellectual testing scores from Dr. Marban, which would serve as *prima facie* evidence of a marked or extreme limitation. *Id.* at 20. Plaintiff also states that the ALJ ignored the testing results of the Claimant's speech and language evaluation. *Id.* at 20–21. According to Plaintiff, the results of this examination showed that Claimant "presented with Borderline receptive language skills and a Moderate language delay characterized by difficulties processing and recalling information, answering questions logically, and using correctly varied components of language." *Id.* Plaintiff argued that these skills related to the domain measuring Claimants ability to acquire and use information. *Id.* at 21. As such, the ALJ should have incorporated these findings into her rationale as they would have provided substantial

---

[9] Further, SSR 09-3p, 2009 WL 396025 (Feb. 17, 2009) provides some examples of limited functioning in the domain of acquiring and using information that children of different ages might have. These examples include: (i) does not understand words about space, size or time (e.g., in/under, big/little, morning/night); (ii) cannot rhyme words or the sounds in words; (iii) has difficulty recalling important things learned in school yesterday; (iv) does not use language appropriate for age; (v) is not developing "readiness skills" the same as peers (e.g., learning to count, reciting ABCs, scribbling); (iv) has difficulty comprehending written or oral directions; (vii) struggles with following simple instructions; (viii) has difficulty solving mathematics questions or computing arithmetic answers; or (ix) talks only in short, simple sentences, and has difficulty explaining what he means. *See also* 20 C.F.R. § 416.926a(g)(3).

evidence to support a finding of a marked and/or extreme limitation in the domain of acquiring and using information.  *Id.*

Defendant responds that the ALJ's decision that Claimant did not have a marked and/or extreme limitation in the domain of acquiring and using information was supported by substantial evidence.  ECF No [22] at 6–13.  In support of this, Defendant states that Plaintiff attempts to have this Court reweigh the evidence by simply pointing to portions of the record that support greater limitations for Claimant.  *Id.* at 13.  Further, the portions of the record mentioned by Plaintiff were considered by the ALJ in reaching the decision, despite not being directly cited in the rationale for according a less than marked limitation in the domain of acquiring and using information.  *Id.* at 13; R. at 32–33.

The ALJ's finding that Claimant has a less than marked limitation in the domain of acquiring and using information is supported by substantial evidence.  *See* R. at 35.  In concluding that Claimant has a less than marked limitation in acquiring and using information, the ALJ relied on the teacher questionnaire completed by Alpha Charter of Excellence.  *Id.* at 35, 453–74.  The ALJ noted that Claimant's teachers stated that he had some problem with acquiring and using information "because he need[ed] to be redirected during tasks and need[ed] help staying on tasks in order to complete activities."  *Id.*  However, the ALJ also referred to Claimant's report cards and noted that despite his ADHD, Claimant earned mostly As, Bs, and Cs, *id.* at 516, 518–20; and that records from the Miami Behavioral Health Center ("MBHC") indicated that Claimant "did fairly well this past year" and that he got "awards at the end of the school year," *id.* at 766.  The ALJ noted that the learning disability evaluation of Dr. Marban included a full-scale IQ evaluation, that his score was in the low average range, that his fluid reasoning was in the average range, and his verbal comprehension was in the extremely low range.  *Id.* at 35, 572–78.  His written language

ability was advanced, his written expression was average to very superior, and his ability to express himself in writing was average to advanced. *Id.* at 35, 576–77. In math, his academic achievement was average. *Id.* at 35, 577. Overall, the academic skills were in the high average range compared to other children. *Id.*

In addition, the ALJ decision also considered other evidence that relates to Claimant's ability to acquire and use information. *Id.* at 30–31. The ALJ considered testimony from Claimant that he does both "good" and "bad" in school, that he has fun in school, but has problems with his teachers because they scream at him for no reason. *Id.* at 30, 54–55. The ALJ considered that Claimant testified that math was difficult and that he has trouble understanding the material. *Id.* at 31, 61. She also noted Claimant's child function reports indicating that Claimant has been in speech therapy. *Id.* at 31, 412. The ALJ also took into account that Plaintiff stated that Claimant "has difficulty using sentences with 'because,' 'what if,' or 'should have been'" and that Claimant is "unable to write in script, write a simple story with six to seven sentences, or understand money." *Id.* at 31, 376, 413. Finally, the ALJ considered Rodriguez's testimony that "[C]laimant had problems in school despite medication." *Id.* at 31, 73.

Although the ALJ did not refer to the intellectual testing scores from Dr. Marban and the testing results of the Claimant's speech and language evaluation specifically in support of her finding in the domain of acquiring and using information, these were discussed and considered by the ALJ in her opinion. *Id.* at 32–33, 35. The ALJ noted, with regard to the testing scores of Dr. Marban, that Claimant had "a full scale IQ in the low average range," and that "his academic skills were in the high average range compared to others at his age level." *Id.* at 32, 35, 576–77. The ALJ also noted that Claimant's intellectual testing scores showed that "[h]is speech was 100% intelligible" and that he "presented with borderline receptive language skills and a moderate

expressive language delay." *Id.* at 32, 585–86.  The other evidence considered, including the teacher questionnaires, *id.* at 451–74, the report cards, *id.* at 518–20, the MBHC record, *id.* at 766, and Dr. Marban's evaluation, *id.* at 572–78, indicate that the ALJ's finding of a less than marked limitation in acquiring and using information was supported by substantial evidence, *id.* at 35. Indeed, the ALJ need not consider every item of evidence before her.  *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005).  Although there may be other evidence in the record that could support a different finding, the ALJ's ultimate conclusion, that Claimant has a less than marked limitation in the domain of acquiring and using information, is supported by substantial evidence.

### C. Substantial Evidence Supports The ALJ's Finding That Claimant Had Less Than Marked Limitations In His Ability To Move About And Manipulate Objects.

The domain of moving about and manipulating objects considers how well a claimant is able to move his body from one place to another and how a claimant moves and manipulates objects. 20 C.F.R. § 416.926a(j).  A school-aged child (age six to age twelve) like Claimant should be able to move at an efficient pace and have increasing strength and coordination that expands his ability to "enjoy a variety of physical activities such as running, jumping, throwing, kicking, catching, and hitting balls in informal play or organized sports."  20 C.F.R. § 416.926a(j)(2)(iv). The child should develop fine motor skills that enable him to "use many kitchen and household tools independently, use scissors, and write."  *Id.*  A child has limitations in this domain, but not necessarily marked limitations, when he has difficulty with motor activities such as unintentionally dropping items; trouble climbing up and down stairs or have jerky or disorganized locomotion or difficulty with balance; difficulty coordinating gross motor movements; difficulty sequencing hand or finger movements; and/or poor eye-hand coordination when using items such as a pencil or scissors.  *See* 20 C.F.R. § 416.926a(j)(3).

Plaintiff argues that Claimant's motor coordination scores on the Beery VMI 5th Edition and the Developmental Programming for Infants and Young Children evaluations were low in certain areas and were insufficiently acknowledged or considered in the ALJ's decision. ECF No. [20] at 22. Specifically, Plaintiff states that in the Beery VMI 5th Edition Evaluation, Claimant was between two and three standard deviations below the mean on the motor coordination score, which provides *prima facie* evidence that a child has a marked limitation in a domain when the impairment or impairments interfere seriously with the ability to independently initiate, sustain, or complete activities. ECF No. [20] at 22; R. at 697–707; *see* 20 C.F.R. § 416.926a(e)(2).

Plaintiff's claim regarding the standard deviation scores in the medical evaluation is unsupported. Specifically, the Occupational Therapy Evaluation does not indicate any standard deviations in the report. *See* R. at 697–707. As such, there is no way for the Court to determine whether Claimant's scores would serve as *prima facie* evidence of any limitation. The Court cannot independently interpret the evaluation results to determine whether Claimant's scores present any standard deviations, when such deviation is not apparent from a reading of the evaluation. *Fontanez*, 195 F. Supp. 2d at 1357. Therefore, Plaintiff's argument that the report provides *prima facie* evidence that Claimant has a "marked" limitation in the domain of moving and manipulating objects is unsubstantiated.

Moreover, the ALJ's finding that Claimant did not have a marked limitation in the domain of moving about and manipulating objects was supported by substantial evidence. *See* R. at 37–38. The ALJ properly considered an evaluation showing Claimant had developmental delays in fine motor skills in July 2015 and properly determined that because of Plaintiff's and Claimant's own statements, Claimant had a less than marked limitation in this domain. *Id.* at 38, 697. In her decision, the ALJ noted that Claimant participated in occupational therapy where he "was noted

to have a 'delay in age appropriate fine motor skills.'" *Id.* at 38, 697.  However, Claimant did not allege that there was any disability or impairment regarding moving about and manipulating objects, and the ALJ is under no duty to consider an impairment that Claimant did not allege was disabling.  *Duffy v. Comm'r of Soc. Sec.*, 736 F. App'x 834, 837–38 (11th Cir. 2018) (holding that the ALJ did not have a duty to consider claimant's Asperger's Disorder when it was not alleged in either her application for benefits or at her hearing as a basis for her disability).  When the ALJ asked Claimant what he does during his free time, Claimant testified that he sometimes plays soccer with his friends.  R. at 58.  Claimant also testified to playing with friends in his physical education class and having no difficulties in using his hands, legs, and body.  *Id.* at 57–59.  The ALJ also asked Claimant if he had any problems with his writing and Claimant only mentioned that "it looks a little bit like not understandable."  *Id.* at 59.  Rodriguez also testified that Claimant helps with household chores, like doing the dishes.  *Id.* at 59–60.  Considering these statements by Claimant and Rodriguez, there is substantial evidence to support the ALJ's conclusion that Claimant has a less than marked limitation in the domain of moving and manipulating objects.  *See Parks v. Comm'r Soc. Sec.*, 353 Fed. App'x 194, 197 (11th Cir. 2009) (pointing to ALJ's discussion of claimant's daily activities to hold that ALJ properly considered claimant's subjective allegations).

## V.    RECOMMENDATION

In accordance with the foregoing Report and Recommendation, the undersigned hereby **RECOMMENDS** that Defendant's Motion for Summary Judgment, ECF No. [22], be **GRANTED**, and that Plaintiff's Motion for Summary Judgment, ECF No. [20], be **DENIED**.

## VI.    OBJECTIONS

Pursuant to Local Magistrate Rule 4(b) and Federal Rule of Civil Procedure 73, the parties have fourteen (14) days from service of this Report and Recommendation within which to file written objections, if any, with the District Judge.  Any request for an extension of this deadline must be made within five (5) calendar days from the date of this Order.  Failure to timely file objections shall bar the parties from *de novo* determination by the District Judge of any factual or legal issue covered in the report and shall bar the parties from challenging on appeal the District Judge's Order based on any factual or legal conclusions included in this Report and Recommendation to which the parties failed to object.  28 U.S.C. § 636(b)(1); *Resolution Tr. Corp. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, this 18th day of August, 2020.

_____
**JACQUELINE BECERRA**
**United States Magistrate Judge**